IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-01642-WJM-KLM

LATONYA DENISE DAVIS,

        Plaintiff,

v.

TODD CLIFFORD, Lakewood Police Officer,
TODD FAHLSING, Lakewood Police Sergeant,
MICHELE WAGNER, Lakewood Police Sergeant,
MICHELLE CURRANT, Lakewood Police Sergeant, and
CITY OF LAKEWOOD, jointly and severally,

        Defendants.

_____

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

        This matter is before the Court on the **Motion for Summary Judgment** [#90],[1] filed

by Defendants Todd Clifford ("Clifford"), Todd Fahlsing ("Fahlsing"), Michele Wagner

("Wagner"), and the City of Lakewood (the "City"), and on the **Motion for Summary**

**Judgment** [#92], filed by Defendant Michelle Current ("Current").[2]  Plaintiff, who proceeds

in this matter as a pro se litigant,[3] filed Responses [#97, #98] in opposition to the Motions,

---

      [1]  "[#90]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Recommendation.

      [2]  Although this Defendant's name is spelled as "Currant" by Plaintiff, the Court uses the correct spelling of this name throughout the Recommendation.  *See Motion* [#92] at 1.

      [3]   The Court must construe the filings of a pro se litigant liberally.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be the pro se litigant's advocate, nor should the Court "supply additional factual allegations to round out [the pro se litigant's] complaint or construct a legal theory on [her] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

and Defendants filed Replies [#99, #102].[4]   The Motions have been referred to the undersigned for recommendation [#91, #93] pursuant to 28 U.S.C. § 636(b) and D.C.COLO.LCivR 72.1(c).  The Court has reviewed the Motions, Responses, Replies, the entire case file, and the applicable law, and is sufficiently advised in the premises.  For the reasons set forth below, the Court respectfully **RECOMMENDS** that Defendants Clifford, Fahlsing, Wagner, and the City's Motion [#90] be **GRANTED** and that Defendant Current's Motion [#92] be **GRANTED**.

## I.  Summary of the Case[5]

Based on the following events, these claims remain in this action: (1) excessive force

---

In addition, pro se litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

[4] Although the Responses are respectively titled "Response to Defendants' Unopposed Motion to Stay All Proceedings Pending Resolution of Defendants' Motions for Summary Judgment" [#97] and "Response to Defendant Michelle Current's Unopposed Motion to Stay All Proceedings Pending Resolution of Defendants' Motions for Summary Judgment" [#98], they are clearly responsive to the pending Motions for Summary Judgment [#90, #92].

[5] The following summary construes the evidence in a light most favorable to Plaintiff, as the nonmovant. *Ellis v. J.R.'s Country Stores, Inc.*, __ F.3d __, __, 2015 WL 1004715 (10th Cir. Mar. 9, 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). However, in the Responses, Plaintiff only occasionally refers to exhibits or filings by name and never with a page number citation, as she is required to do by the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials . . . ."). For example, although Plaintiff asserts that her Statement of Facts relies on "the CD of the Deposition Proceedings dated August 29, 2014, together with any and all medical records and reports relating [to] the injuries sustained on February 25, 2012," she does not include a copy of the deposition transcript and does not provide any citation to the deposition transcript or other submitted evidence. *Response* [#98] at 2 n.1. While Defendants provide excerpts from Plaintiff's deposition, *see* [#90-1, #92-1], the Court is not required to comb through Plaintiff's deposition or through the more than 200 pages of documents submitted by Plaintiff which purportedly support her claims. *See* Fed. R. Civ. P. 56(c)(3) (stating that the Court "need consider only the cited materials"). The Court may, and has, considered other materials in the record. *See id.* However, the Court may not and has not done Plaintiff's job for her by organizing her submissions and researching every document to find support for the statements made in her briefing.

in violation of the Fourth Amendment against Defendants Clifford, Fahlsing, Wagner, and Current in their individual capacities, and (2) a § 1983 failure-to-train and failure-to-supervise claim against the City. *See Order* [#46] at 8.[6]  These claims arise solely from a traffic stop and arrest of Plaintiff on February 25, 2012.  *See generally Order* [#46] at 2-3 (summarizing the allegations in the Amended Complaint [#29]).

On the evening of February 25, 2012, Plaintiff, who was in her early 40s, driving east on Alameda Avenue in Lakewood, Colorado.  *Response* [#97] ¶ 1; *Reply* [#99] ¶ 1; *Reply* [#102] ¶ 1; *Depo. of Pl.* [#92-1] at 189-90; [#101-1] at 2; [#101-2] at 2.  She was driving to a store to pick up dog food.  *Response* [#97] ¶ 1; *Reply* [#99] ¶ 1; *Reply* [#102] ¶ 1; *Depo. of Pl.* [#92-1] at 189.  From his patrol car, Defendant Clifford entered Plaintiff's license plate number into a law enforcement computer database, which revealed that there was an active warrant for Plaintiff's arrest for driving with a suspended license due to failure

---

[6]  In her Responses [#97, #98], Plaintiff cites to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*, and to Colo. Rev. Stat. § 25-20-104.  Plaintiff may be citing to these statutes to support her assertion that law enforcement personnel should have treated her more gently.  *See, e.g., Response* [#97] at 14 ("Plaintiff reiterates that she should have been free from excessive force specifically because she has handicap license plates issued from the Division of Motor Vehicles.").  However, she may also be attempting to assert claims against Defendants under these statutes.  *See, e.g., id.* at 17-18 (". . . Plaintiff suffered physical and mental injuries in connection with the deprivation of her constitutional and statutory rights as specified in . . . the Americans with Disability [sic] Act . . . and . . . Colo. Rev. Stat. § 25-20-104.").  To the extent that Plaintiff may be attempting to assert liability under these statutes, the Court notes that Plaintiff has not asserted these claims before and may not do so for the first time in response to motions for summary judgment.  *See Carbajal v. St. Anthony Cent. Hosp.*, No. 12-cv-02257-REB-KLM, 2015 WL 1499864, at *1 (D. Colo. Mar. 27, 2015) (stating that "claims not pleaded specifically in an operative complaint are not preserved for ultimate presentation to a trier of fact") (citing *Evans v. McDonald's Corp.*, 936 F.2d 1087,1091 (10th Cir. 1991) ("We do not believe, however, that the liberalized pleading rules permit plaintiffs to wait until the last minute to ascertain and refine the theories on which they intend to build their case."); *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994) ("A busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *Hayes v. Whitman*, 264 F.3d 1017, 1027 (10th Cir. 2001) ("'[W]e do not favor permitting a party to attempt to salvage a lost case by untimely suggestion of new theories of recovery.'") (quoting *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998)).

to provide proof of insurance.  *Motion* [#90] ¶ 6; *Ex. B* [#90-2].  Plaintiff turned onto Wadsworth Boulevard, at which point Defendant Clifford activated his lights and siren.  *Ex. B* [#90-2].  Plaintiff pulled into a parking lot next to a credit union, which she chose because it was well-lit.  *Ex. A, Depo. of Pl.* [#90-1] at 200.  Defendant Clifford followed Plaintiff into the parking lot.  *Ex. B* [#90-2].  Before exiting his patrol car, Defendant Clifford sent out a radio message to the Lakewood Police Department dispatch, stating that the license plate of Plaintiff's vehicle was associated with an arrest warrant for the registered owner and presumed driver of the vehicle.  *Ex. B* [#90-2].  Defendant Wagner was independently driving by the scene in his patrol car as Defendant Clifford made the stop and followed Defendant Clifford into the parking lot to provide back-up if needed.  *Ex. B* [#90-2].  By coincidence, Defendants Current and Fahlsing were already in the parking lot on an unrelated matter, and they also prepared to offer aid to Defendant Clifford if he needed it.  *Ex. B* [#90-2].

Plaintiff meanwhile parked her car, left the keys in the ignition, kept her seatbelt on, and rolled her driver's side window up to leave a gap of no more than three inches.  *Ex. B* [#92-2]; *Ex. C* [#92-3] at 3.  Plaintiff's car was then blocked in by three patrol cars, one in front, one on the passenger side, and one in the back.  *Ex. A, Depo. of Pl.* [#92-1] at 204.  Plaintiff heard batons banging on her car as she saw multiple police officers walking around it.  *Ex. A, Depo. of Pl.* [#92-1] at 184.  Defendants Clifford and Fahlsing approached Plaintiff's car on the driver's side of the vehicle.  *Ex. A, Depo. of Pl.* [#92-1] at 184.  Defendants Wagner and Current approached Plaintiff's car on the passenger side of the vehicle.  *Ex. A, Depo. of Pl.* [#92-1] at 184.  Defendant Clifford repeatedly informed Plaintiff that there was a warrant for her arrest, that she was under arrest, and that she must open

her locked car door immediately. *Ex. A, Depo. of Pl.* [#92-1] at 211-12; *Ex. B* [#92-2]. Plaintiff did not obey orders to immediately exit her vehicle. *Ex. A, Depo. of Pl.* [#92-1] at 180. Plaintiff tried to speak to Defendants Clifford and Fahlsing, telling them that she would get out of the car if they promised not to hurt her. *Ex. A, Depo. of Pl.* [#102] at 211-12. Defendant Clifford told her to get out of her car at least three times. *Ex. A, Depo. of Pl.* [#92-1] at 210. Both Defendants Clifford and Fahlsing were yelling at her, and Defendant Fahlsing was threatening to break her window. *Ex. A, Depo. of Pl.* [#92-1] at 188. When Plaintiff did not exit the vehicle, Defendant Fahlsing shattered the driver's side window with his baton. *Ex. A, Depo. of Pl.* [#92-1] at 211.

When that happened, Plaintiff immediately felt like she had glass in her left eye and in her mouth, and she began screaming and praying as several pairs of arms reached into her vehicle, undid her seatbelt, and pulled her out through the window by her arms and her hair. *Ex. A, Depo. of Pl.* [#92-1] at 224-25. She says she was then thrown to the glass-covered asphalt and suffered some cuts.[7] *Ex. A, Depo. of Pl.* [#92-1] at 229-30. After Plaintiff was removed from her vehicle and placed on the ground by Defendants Clifford and Fahlsing, Defendant Wagner approached her on one side and Defendant Current approached on the other side.[8] *Ex. A, Depo. of Pl.* [#92-1] at 225-26. One of the female officers (Plaintiff does not know which one) then verbally said something to the effect that she was holding Plaintiff's lower body, legs, or feet. *Ex. A, Depo. of Pl.* [#92-1] at 226.

---

[7] While in the Responses [#97, #98] Plaintiff asserts more actions taken by Defendants Clifford and Fahlsing and far greater injuries than those stated here, she has not directed the Court's attention to evidence in support of these additional alleged facts.

[8] Plaintiff is unsure which female officer was on which side of her, but she further states that Defendant Clifford was also on her left side and Defendant Fahlsing was on her right side along with several other people. *Ex. A, Depo. of Pl.* [#92-1] at 226.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact.  *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor.  *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber County*, 744 F.3d 1220, 1227 (10th Cir. 2014).  Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence.  *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).  The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded.  *See* 10B Charles Alan Wright, et al., Federal Practice

and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> . . .
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

## III.   Analysis

### A.   Applicability of *Scott v. Harris*

At the outset, the Court addresses Defendants' general argument regarding Plaintiff's proffered evidence. Defendants argue that some of Plaintiff's statements are so incredible that no reasonable jury could believe them. *See, e.g.*, *Reply* [#102] at 12-14. In support, Defendants cite to *Scott v. Harris*, 550 U.S. 372, 380 (2007), for the proposition that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Reply* [#102] at 12.

The Tenth Circuit Court of Appeals has addressed the contours of *Scott* many times. In *Tellez v. City of Belen*, 560 F. App'x 812, 815 (10th Cir. 2014), the court found that *Scott*

applied because "the video and photographic evidence blatantly contradict[ed] the statements of [the plaintiff's witnesses] that [the deceased] did not have a gun, and the other neighbors' statements [were] consistent with that evidence." In *Joint Technology, Inc. v. Weaver*, 567 F. App'x 585, 588 n.3 (10th Cir. 2014), the court found that *Scott* applied to an affidavit that was "largely uncorroborated, conclusory, and contradicted, in parts, by a two-hour recording of a conference call . . . ." In *Pierson v. Bassett*, 534 F. App'x 768, 771 (10th Cir. 2013), the court found that *Scott* applied when "[n]o rational trier of fact could believe plaintiff's characterization of his own behavior as compliant and never argumentative after hearing the audiotapes [that plaintiff made of the encounter on his cellphone]."

*Scott*, *Tellez*, *Weaver*, and *Pierson* are distinguishable, because in this case there is no video or audio recording of the underlying events in evidence. The circumstances of this case most closely parallel the Tenth Circuit's decision in *Rhoads v. Miller*, 352 F. App'x 289, 291 (10th Cir. 2009), in which the court rejected the application of *Scott*:

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury." *Scott v. Harris*, 550 U.S. 372, 377 (2007). "[T]his usually means adopting . . . the plaintiff's version of the facts," *id.* at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," *id.* at 380. In *Scott*, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events. 550 U.S. at 379. Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony. There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury. And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility.

> Mr. Rhoads alleges that his injuries resulted from a beating rendered without resistance or provocation. If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under *Graham v. Connor*, 490 U.S. 386, 395-96 (1989), and this court's precedent.

> The jurors may decide not to credit Mr. Rhoads' testimony, but that is their prerogative, not ours. Therefore, the district court did not err in denying Deputy Miller's motion for summary judgment based on qualified immunity.

*Id.* at 291-92 (internal citations and footnotes omitted).

The Court, of course, need not consider conclusory statements made by Plaintiff that are "based merely on conjecture, speculation, or subjective belief" and for which there is no other evidentiary support. *Scott*, 550 U.S. at 380; *Bones*, 166 F.3d at 875. However, even excluding such statements, there are some aspects of this incident for which there are two versions of the events—Defendants' version and Plaintiff's version—each of which is supported to a greater or lesser extent by sworn deposition testimony or other evidence. Many of these supported factual conflicts are immaterial, as discussed below. Moreover, while the weight of the evidence may tend to support one version, to the extent that there is some material conflict of evidence, questions of credibility and interpretation should be resolved by the fact finder. *Ellis*, 2015 WL 1004715; *see, e.g., Klein v. Grynberg*, 44 F .3d 1497, 1503-04 (10th Cir. 1995); 10A Charles Alan Wright et al., Federal Practice and Procedure § 2726 at 443-48 (3d ed. 1998). Thus, to the extent that Defendants assert that summary judgment is appropriate because the weight of the evidence rests in their favor, "[s]ummary judgment concerns the sufficiency of the evidence to present an issue for trial, not the weight of such evidence." *Carey v. USPS*, 812 F.2d 621, 623 (10th Cir. 1987); *United States v. Hager*, 969 F.2d 883, 888 (10th Cir. 1992) ("The credibility of a witness and weight of his testimony are for the trier of fact alone."), *abrogated on other grounds by Bailey v. United States*, 516 U.S. 137 (1995); *see also United States v. Great Salt Lake Council, Inc.*, No. 2:04-CV-604 TC, 2007 WL 189470, at *3 (D. Utah Jan. 22, 2007) (noting that a "single sworn statement is sufficient to create an issue of fact precluding summary

judgment" (citation omitted)).   Accordingly, the Court proceeds to the merits of Plaintiff's

claims.

B.    **Excessive Force**

Section 1983 provides, in part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

"[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to victims if such

deterrence fails."   *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

The individual Defendants assert that they are entitled to qualified immunity on

Plaintiff's excessive force claim.   *Motion* [#90] at 2; *Motion* [#92] at 2.   A government official

sued under § 1983 is entitled to qualified immunity unless it is shown that the official

violated a constitutional right that was clearly established at the time of the challenged

conduct.   *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014) (citing *Ashcroft v. al-Kidd*, 131

S. Ct. 2074, 2080 (2011)).   "The doctrine of qualified immunity shields government officials

performing discretionary functions from liability for damages 'insofar as their conduct does

not violate clearly established constitutional rights of which a reasonable person would

have known.'"   *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v.

Fitzgerald*, 457 U.S. 800, 818 (1982)).   Qualified immunity also offers protection from trial

and other burdens of litigation.   *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).   Because the

defense of qualified immunity is raised, the Court considers whether the summary judgment

evidence demonstrates that each individual Defendant violated a constitutional right, and,

second, whether that constitutional right was clearly established at the time of the alleged violation.  *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001); *cf. Pearson v. Callahan*, 555 U.S. 223, 242 (2009).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  *Saucier*, 533 U.S. at 201.  However, the Supreme Court has held that courts are no longer required to address the inquiries in a particular order when evaluating a qualified immunity claim.  *Pearson v. Callahan*, 555 U.S. 223 (2009).

In order for Plaintiff's claims "to survive summary judgment, the record must contain facts that rebut the presumption of [each individual Defendant's] immunity from suit." *Medina v. Cram*, 252 F.3d 1124, 1130 (10th Cir. 2001); see *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 593 (10th Cir. 1999) (denying summary judgment on qualified immunity where the "[t]he record supports the allegation that the plaintiffs' Fourth Amendment rights were violated"); *Bruning v. Pixler*, 949 F.2d 352, 356 (10th Cir. 1991) (noting that when "a government official raises the defense of qualified immunity in a motion for summary judgment, the plaintiff must produce facts sufficient to show both that the defendant's alleged conduct violated the law and that [the] law was clearly established when the alleged violation occurred"); *Rounds v. Corbin*, No. 04-cv-02532, 2009 WL 2982006, at *2-3 (D. Colo. Sept. 11, 2009) (denying qualified immunity on summary judgment because plaintiff "submitted more than unsupported allegations" to support his claim); *Kelley v. City of Albuquerque*, 375 F. Supp. 2d 1183,1203 n.7 (D.N.M. 2004) (citing *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988)) (noting that to overcome the defendant's motion for summary judgment on the basis of qualified immunity, the "plaintiff must do more than rest on [his or her] own speculation or pleadings").

The individual Defendants assert that the summary judgment evidence fails to demonstrate that each individual Defendant violated a constitutional right, and even if they did violate Plaintiff's constitutional rights, those rights were not clearly established at the time of the alleged violations.

### 1.   Constitutional Violation

"[A] plaintiff may only recover on an excessive force claim if she shows '(1) that the officers used greater force than would have been reasonably necessary to effect a lawful seizure, and (2) some actual injury caused by the unreasonable seizure that is not de minimis, be it physical or emotional.'"  *Aldaba v. Pickens*, 777 F.3d 1148, 1161 n.3 (10th Cir. 2015) (quoting *Cortez v. McCauley*, 478 F.3d 1108, 1129 n.25 (10th Cir. 2007)). Defendants contest both elements of this test.

### a.   Actual Injury

The Court first examines the second element of this test, whether Plaintiff suffered an actual injury caused by the allegedly excessive force.  The Tenth Circuit has made clear that an excessive force claim requires evidence of an injury that is not de minimis.  *Bella v. Chamberlain*, 24 F.3d 1251, 1257 (10th Cir. 1994) ("[W]e have never upheld an excessive force claim without some evidence of physical injury."); *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1279 (10th Cir. 2003) (stating that the defendants did not employ excessive force against the plaintiff in part because the plaintiff "suffered no physical injuries as a direct result of the defendants' actions"); *Cortez*, 478 F.3d at 1129 ("We believe that a claim of excessive force requires some actual injury that is not de minimis, be it physical or emotional."); *Aldaba*, 777 F.3d at 1161 n.3 (citing *Cortez* for the proposition that a viable claim of excessive force requires an actual physical or emotional injury that

is not de minimis).

Generally, with exceptions discussed below, Plaintiff has failed to present evidence of physical and emotional injuries that were allegedly caused by the incident underlying this lawsuit. Plaintiff does provide a variety of medical records in connection with her Response [#98].[9]   However, there is no clear connection between these records and the injuries Plaintiff alleges to have sustained during the police encounter. In other words, Plaintiff fails to present evidence that any action taken by the individual Defendants caused the injuries or medical issues reflected in the medical records. As Defendants state, "any documentation in Plaintiff's medical records is not accompanied by an opinion from any of her treating physicians that any action or inaction of any individual Defendant was the proximate cause of or a substantial factor in bringing about Plaintiff's alleged injuries." *Reply* [#99] at 19.

However, Plaintiff underwent a physical evaluation and a psychological evaluation by two independent medical examiners, and their reports are provided by Defendants. *See Ex. K, Expert Report of Kristin Mason, M.D.* [#101-1]; *Ex. L, Expert Report of Robert Kleinman, M.D.* [#101-2]. Kristin Mason, M.D. ("Mason") conducted Plaintiff's physical independent medical examination. In a lengthy report, she first reviewed Plaintiff's self-reported history regarding allergies, medications, past medical history, past surgical history,

_____

[9] In the Reply, Defendants suggest the Court strike many of Plaintiff's exhibits on the basis that they were not previously disclosed to Defendants, even though some, at least, were specifically requested by them through written discovery. *Reply* [#99] at 13. Defendants also take issue with what may be intended to be Plaintiff's affidavit. *Id.* at 13-14. The Court need not resolve these concerns, however. First, Defendants failed to comply with D.C.COLO.LCivR 7.1(d), which provides: "A motion shall not be included in a response or reply to the original motion. A motion shall be field as a separate document." Second, the majority of these documents are immaterial to the Court's adjudication of the Motions. Third, the only document on which the Court partly relies, i.e., [#98-16], is not dispositive of any issue herein addressed.

mental health history, work history, family history, social history, and functional history. *Ex. K, Expert Report of Kristin Mason, M.D.* [#101-1] at 2-7. She then conducted a physical examination of Plaintiff, *id.* at 7-8, and reviewed Plaintiff's extensive medical records, *id.* at 8-53. Dr. Mason assessed Plaintiff as having "an exceptionally complex medical history with [31 various] preexisting medical and psychiatric issues . . . ." *Id.* at 53-54.

Dr. Mason then specifically assessed the ten injuries and complaints alleged by Plaintiff to have been caused or exacerbated by her encounter with Lakewood police on February 25, 2012. *Id.* at 54. First, Dr. Mason stated that "[t]here is really no clearcut documentation in her copious medical records of any real increased problems with management of her chronic migraine headaches." *Id.* at 55. Second, Dr. Mason deferred "on any evaluation of [an alleged increase of Plaintiff's post-traumatic stress disorder ("PTSD")] to a psychiatrist or a psychologist" because Plaintiff's "psychiatric issues appear to be extremely complex and multifactorial." *Id.* Third, "[w]ith respect to [Plaintiff's] allegation that her neck fusion need arose out of the incident, that is simply not true." *Id.* Fourth, Dr. Mason stated that "the majority of [Plaintiff's] knee symptoms are due to chronic degenerative changes which are slowly progressive over time. Any need for future surgery is relevant to those processes and not to any trauma sustained in the police incident." *Id.* at 56. Fifth, regarding Plaintiff's left knee pain, Dr. Mason stated "I cannot relate any of the care for her left knee to the incident." *Id.* Sixth, Dr. Mason opined that "[i]t is possible she sustained further [shoulder] injury in the altercation on her already symptomatic right shoulder. The . . . tear appears to have been new since the prior MRI and certainly could have occurred potentially during the assault although it is impossible to say with certainty." *Id.* at 57. Seventh, regarding Plaintiff's right facial droop, Dr. Mason found that "it does not

seem likely to be tied to the assault . . . ." *Id.* at 58.  Eighth, regarding cognitive complaints, Dr. Mason found that "[t]hese seem to be most likely due to her underlying psychiatric disorder which has caused a lot of erratic behavior and fairly extreme mood swings." *Id.* at 58.  Ninth, Plaintiff "reported to [Dr. Mason] she had glass in her eyes.  She had a slit lamp examination two days after the incident which was negative for any foreign bodies.  A slit lamp examination is extremely sensitive for locating any foreign materials in the anterior chamber of the eye." *Id.*  Finally, regarding dysfunctional uterine bleeding, Dr. Mason stated "[t]here is simply no evidence that she sustained abdominal trauma that contributed to this problem as it clearly was bad enough to pursue medical attention previous to the encounter with police on 2/25/12." *Id.*  Dr. Mason's overall final conclusions were that:

> Ms. Davis presents as a chronically ill individual with significant mental health issues as well as chronic pain and disability.  As such, her physical complaints are likely to be shaded fairly significantly by her underlying psychiatric issues which are significant.  Unfortunately, that makes her report of events erratic and changeable over time.  I suspect she is not attempting to distort the facts but merely presenting the facts as she sees them through the screen of her significant psychologic distress.  It is clear, however, through the medical records that her report of incidents and causation analysis that she makes on her own seems to change fairly frequently and, therefore, her reports really cannot be taken at face value.  The medical records clearly indicate that most of the issues she is attributing to the encounter she had with the police on 2/25/12 are significantly preexisting.  Unfortunately, I do not think we can rely on her report of how her symptoms have changed as I do not think she really is a reliable historian based on the multiple inconsistencies of her presentation in the medical records.

*Id.* at 58-59.[10]

---

[10] To the extent that Dr. Mason provides an opinion regarding Plaintiff's credibility, the Court does not consider this aspect of her opinion when determining Defendant's Motion. *See, e.g.*, *United States v. Hill*, 749 F.3d 1250, 1260 (10th Cir. 2014) (stating that "the credibility of another is not an appropriate subject for expert opinion testimony").  Rather, this information is included in the interest of completeness and in order to provide context for Dr. Mason's opinion.

The Court next turns to the psychiatric independent medical examination performed by Robert E. Kleinman, M.D. ("Kleinman").  *Ex. L, Expert Report of Robert Kleinman, M.D.* [#101-2].  Dr. Kleinman first reviewed Plaintiff's self-reported history, current physical and mental complaints and treatment, activities of daily living, past medical and psychiatric history, alcohol use, marijuana use, illicit drug use, legal history, financial history, psychosocial history, academic history, employment history, and marital/interpersonal relationship history.  *Id.* at 2-9.  Dr. Kleinman then performed a mental status examination, *id.* at 9-11, and reviewed Plaintiff's medical and mental health records, *id.* at 11-36.  Dr. Kleinman then provided a thorough assessment and diagnosis of Plaintiff, concluding that she has (1) chronic PTSD, (2) "[p]sychological factors affecting other medical conditions," (3) "[f]actitious disorder (with false imputation)," (4) "Unspecified Personality Disorder, mixed and not otherwise specified," (5) "unspecified bipolar disorder," and (6) "[m]ultiple medical problems."  *Id.* at 37-44.  Dr. Kleinman concluded:

> It is my opinion, within a reasonable medical certainty, that—Ms. Davis has the diagnosis given above.  From a psychological perspective, Ms. Davis does not have an injury related to the events of 02/25/12.  Ms. Davis does not require any mental health or psychiatric treatment related to the 02/25/12 incident.  Ms. Davis does not have any mental health restrictions or limitations related to the 02/25/12 incident.  Ms. Davis['] representation of what happened on 02/25/12 and on the few days that followed cannot be accepted at face value as her history is exaggerated and varies from time to time.  Ms. Davis['] report of how well she was doing prior to the 02/25/12 incident is discrepant with the medical records.  That Ms. Davis insists that the problems she had before are due to the 02/25/12 incident is false imputation.  Ms. Davis['] report of how poorly she is doing now is exaggerated as evidenced by her out performing her complaints.  This is conscious misrepresentation, motivated by secondary gain as well as external incentives.   In the presence of external incentives, other considerations need to be contemplated.  Ms. Davis does not have any additional psychological or physical problems brought on by the February 25, 2012 incident with Lakewood Police.  That she says she did is, in part, false imputation.  All the records indicate that she is back to her baseline from prior to that incident.  She has consistently misrepresented how well she was prior

to 2012, how bad the incident was, and how poorly she is doing now, in an effort to influence the outcome of evaluations so as to make it appear the 2012 incident was responsible for problems that she is having.

*Id.* at 45 (reformatted to remove bullet points).[11]

Plaintiff asserts in her unsworn Responses [#97, #98] various injuries she allegedly incurred. However, for the most part (as further explained below), she does not provide an affidavit, deposition testimony, or other evidence that demonstrates a causal relationship between her injuries and the incident with Lakewood police, as she must. *See, e.g.*, *Valencia v. De Luca*, __ F. App'x __, __, No. 14-2171, 2015 WL 3461365, at *5 n.7 (10th Cir. June 2, 2015) ("Although Mr. Valencia averred that there are medical records showing he suffered serious physical and emotional injuries, he provided no evidence of the nature or extent of any injuries such that they might bear on the reasonableness of the force used." (citing *Cortez*, 478 F.3d at 1129)); *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002) ("We include in our consideration information set out in the nonmovant's affidavit if that information is based on personal knowledge and sets forth facts that would be admissible in evidence. We do not consider conclusory and self-serving affidavits." (internal citations and quotation marks omitted)); *Stine v. Swanson*, No. 2008 WL 4330568, at *12 (D. Colo. Sept. 18, 2008) ("The Court finds that Plaintiff has shown that he suffered from a serious knee injury. . . . However, the Court finds that Plaintiff has failed to prove that the temporary and relatively brief denial of a knee brace itself caused an injury from which Plaintiff did not already suffer. Aside from Plaintiff's conclusory allegations,

---

[11]   As the Court noted with respect to Dr. Mason, to the extent that Dr. Kleinman provides an opinion regarding Plaintiff's credibility, the Court does not consider this aspect of his opinion when determining Defendant's Motion. *See, e.g.*, *Hill*, 749 F.3d at 1260. Rather, this information is included in the interest of completeness and in order to provide context for Dr. Kleinman's opinion.

there is no evidence that his transportation to and from the hospital without a knee brace caused any additional injury whatsoever."); *Bones*, 366 F.3d at 875 (10th Cir. 2004) (holding that "[u]nsubstantiated allegations carry no probative weight in summary judgment proceedings"); *Anderson*, 477 U.S. at 249-50 (noting that "evidence [that] is merely colorable, or is not significantly probative" does not defeat summary judgment (citations omitted)).

Thus, the Court is presented only with the expert opinions of two independent medical experts. These independent opinions are uncontradicted, as explained above. Based on these opinions, there is no medical evidence that Plaintiff suffered mental or emotional injury from the incident with Lakewood law enforcement personnel on February 25, 2012. Similarly, based on these opinions, there is very little medical evidence that Plaintiff suffered a physical injury from the incident.[12]

However, Plaintiff has presented some evidence with respect to the following physical injuries. First, regarding Plaintiff's deposition testimony that she suffered some cuts/abrasions from glass on the ground, there is little explanatory evidence and no evidence that these injuries were anything other than de minimis. *See Ex. A, Aff. of Pl.* [#92-1] at 229-30. *See, e.g.*, *Duncan v. Quinlin*, No. 15-cv-00575-LTB, 2015 WL 1726802, at *4 (D. Colo. Apr. 13, 2015) (collecting cases with examples of de minimis injury) (citing *Askew v. Millerd*, 191 F.3d 953, 958 (8th Cir. 1999) (providing that: "Section 1983 is intended to remedy egregious conduct, and not every assault or battery which violates

---

[12] The Court also notes that Plaintiff has not alleged any injury resulting from her hair being pulled. *See, e.g.*, *Palmer v. Unified Gov't of Wyandotte Cnty./Kans. City, Kans.*, 72 F. Supp. 2d 1237, 1247 (D. Kan. 1999) (discussed in the context of a Fourth Amendment excessive force claim). "Furthermore, . . . not surprisingly, [P]laintiff has not cited, and the [C]ourt's research fails to reveal, any authority for the proposition that an officer's pulling on an arrestee's hair rises to the level of a constitutional violation." *Id.*

state law will create liability under it"); *White v. Roper*, 901 F.2d 1501 (9th Cir. 1990) (injuries of abrasions on wrists with no evidence of follow-up treatment failed to demonstrate excessive force); *Dockery v. Beard*, Civil No. 12-3317, 2013 WL 139624, at *2-3 (3d Cir. Jan. 11, 2013) (evidence of slight abrasions indicated that officers applied minimal force in a good-faith effort to maintain or restore discipline when prisoner failed to obey order); *Hill v. Kelly*, No. CIV.A. 96-1036, 1997 WL 638402 (E.D. Pa. 1997) (bruise and a cut on his thumb as a result of the door closing on his thumb is the kind of de minimis imposition with which the Constitution is not concerned); *Barber v. Grow*, 929 F. Supp. 820 (E.D. Pa. 1996) (some cuts and bruises to arm and knee suffered as a result of guard pulling chair out from under inmate presents no set of facts that a reasonable jury could find intentional wanton behavior)).

Second, regarding Plaintiff's asserted eye injury, the only evidence of injury is from a report by O. Joseph Bebber, Jr., apparently an employee of Advances In Sight Vision Center in Lakewood, Colorado, although there is no indication of whether he is an optometrist or other medical eye professional. [#98-16] at 11-12.   The report is dated February 29, 2012 (four days after the incident with Lakewood police).   *Id.* at 11.   Aside from the timing of the report, nothing supports a causal connection between Plaintiff's alleged eye injury and her encounter with Lakewood police either.   *Id.*   The report notes that Plaintiff's eye (which eye is not specified) had a scratch or scrape on it, causing "a disruption on the surface causing a loss of superficial tissue."   *Id.*   There is no indication of the severity of this injury, which Plaintiff was directed to treat by frequently lubricating with antibiotic eye drops or ointment and by keeping her eye closed, without the use of an eye patch, to "hasten the healing process."   *Id.*   There is no evidence that Plaintiff's eye

retained any glass or other foreign body with which the eye may have come into contact. *See id*; *Ex. K, Expert Report of Kristin Mason, M.D.* [#101-1] at 58 (stating that Plaintiff "reported to [Dr. Mason] she had glass in her eyes.  She had a slit lamp examination two days after the incident which was negative for any foreign bodies.  A slit lamp examination is extremely sensitive for locating any foreign materials in the anterior chamber of the eye.").

Finally, the Court notes that Dr. Mason opined that "[i]t is possible [Plaintiff] sustained further [shoulder] injury in the altercation on her already symptomatic right shoulder.  The SLAP tear appears to have been new since the prior MRI and certainly could have occurred potentially during the assault although it is impossible to say with certainty." *Ex. K, Expert Report of Kristin Mason, M.D.* [#101-1] at 57.  Plaintiff has therefore presented some evidence of causation of this injury, which need not be proven to a medical certainty. *See Pritchett v. I-Flow Corp.*, No. 09-cv-02433-WJM-KLM, 2012 WL 1326406, at *6 (D. Colo. Apr. 17, 2012).

Based on the foregoing, the Court finds that there is a genuine issue of material fact with respect to at least some of Plaintiff's physical injuries, whether they are more than de minimis, and whether they were caused by Lakewood police on February 25, 2012. *See, e.g.*, *Herrera v. Bernadillo Cnty. Bd. of Cnty. Comm'rs*, 361 F. App'x 924, 929 n.2 (10th Cir. 2010) (stating that evidence of torn ligaments and meniscus in knee meet the de minimis injury standard).

### b.   Reasonableness of Force

The Supreme Court has held that the use of excessive force by law enforcement officers in the course of an arrest, investigatory stop, or other seizure should be analyzed

under the Fourth Amendment "reasonableness" standard.  *Graham v. Connor*, 490 U.S. 386, 395 (1989).  Accordingly, "[t]o establish a constitutional violation, the plaintiff must demonstrate the force used was objectively unreasonable."  *Havens v. Johnson*, 783 F.3d 776, 781 (10th Cir. 2015) (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008)).  "In assessing objective reasonableness, we evaluate whether the totality of the circumstances justified the use of force."  *Havens*, 783 F.3d at 781 (citing *Estate of Larsen*, 511 F.3d at 1260).  This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.  "As in other Fourth Amendment contexts, however, the 'reasonableness inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."  *Aldaba*, 777 F.3d at 1155 (quoting *Graham*, 490 U.S. at 397).

The Court first applies the *Graham* factors to examine the situation that led to the use of force against Plaintiff before looking at the actions of each Defendant.  *See, e.g.*, *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281-82 (10th Cir. 2007).  First, regarding the severity of the crime at issue, Plaintiff was subjected to a justified traffic stop after Defendant Clifford entered her license plate number into a law enforcement computer database, which revealed that she had an active warrant for her arrest for driving with a suspended license due to failure to provide proof of insurance.  *Ex. B, Excerpts of Incident Report* [#92-2] at 2; *see Mecham v. Frazier*, 500 F.3d 1200, 1204 (10th Cir. 2007).  This

type of crime is nonviolent and, while serious, cannot be considered severe under the circumstances of this case, where there is no evidence that Plaintiff had been involved in a collision or was driving in a dangerous manner. *See, e.g.*, *Casey*, 509 F.3d at 1281. Under these facts, Plaintiff's crime was generally harmless, "which reduces the level of force that was reasonable for [the officers] to use." *Id.*

Second, regarding whether there was an immediate threat to safety, although Plaintiff refused orders to immediately exit her vehicle, which may have created some uncertainty in the mind of a reasonable police officer as to what could happen, there is no evidence that Plaintiff was driving dangerously, that she had any weapons, or that she verbally threatened to harm herself or others. Under these facts, Plaintiff could not have been seen as having more than a low level of potential dangerousness by an objectively reasonable law enforcement officer. *See Casey*, 509 F.3d at 1282.

Third, regarding whether Plaintiff was actively resisting arrest or attempting to evade arrest, Plaintiff did not obey orders to immediately exit her vehicle and when the officers approached, she rolled her window up until only a small gap remained. *Ex. A, Depo. of Pl.* [#92-1] at 180. As Defendants contend, these facts indicate some level of resistance. The Tenth Circuit has noted that disobeying direct orders by a law enforcement officer attempting to make a seizure is a type of active resistance to arrest. *Aldaba*, 777 F.3d at 1158 ("In cases where the subject actively resisted seizure, whether by physically struggling with an officer or by disobeying direct orders, courts have held that no constitutional violation occurred or that the right not to be tased in these circumstances was not clearly established."). Under such circumstances, the Tenth Circuit has stated that "a higher level of force may be employed." *Id.* However, Plaintiff's car was blocked in by

three patrol cars, one in front, one on the passenger side, and one in the back.  *Ex. A, Depo. of Pl.* [#92-1] at 204.  "The Fourth Amendment permits increased force when a subject is attempting to run away and thereby evade capture."  *Casey*, 509 F.3d at 1282.  There is no evidence that Plaintiff was attempting to flee.  Indeed, it is difficult to imagine how she could have suddenly driven away given the configuration of law enforcement vehicles around her car.  Regardless, she did otherwise still have control of her vehicle, including having control of her keys.  Under these facts, the Court finds that there is a slight reduction in, though not an elimination of, the level of force that a reasonable officer might use.  *Casey*, 509 F.3d at 1282; *Mecham*, 500 F.3d at 1205 (holding that, even though the officer did not believe the driver was a flight risk, some degree of force was permissible when she had her keys and control of the car while refusing to cooperate).

The Tenth Circuit Court of Appeals has stated that "these three [*Graham*] factors were not intended to be exclusive, and the circumstances of a particular case may require the consideration of additional factors."  *Aldaba*, 777 F.3d at 1155.  In *Aldaba v. Pickens*, the court discussed three additional factors which may, depending on the circumstances of the case, be appropriately considered.  *Id.* at 1155-57.  Two of these factors do not appear to have direct relevance to the facts of this case: (1) the government's interest in preventing a mentally disturbed individual from harming himself in the context of protective custody seizures, and (2) the fact that a detainee's known mental health issues must be taken into account when considering the officers' use of force.  *Id.* at 1155-56.

The third additional factor discussed by the *Aldaba* court does have direct relevance here.  *Id.* at 1156-57.  "[T]he reasonableness of a particular use of force depends in part on whether the law enforcement officer knew or should have known that the individual had

special characteristics making [her] more susceptible to harm from this particular use of force." *Id.* at 1156. "[W]hen an individual's diminished capacity is apparent, [and] this diminished capacity . . . result[s] from . . . [a] condition apparent to the officers at the time, which would make the application of [a given level of force] likely to result in any significant risk to the individual's health or well-being, . . . [then the] individual's condition mandates the use of less restrictive means for physical restraint." *Id.*

Here, Plaintiff raises this issue by arguing that the officers should have handled her more gently because of her alleged physical disability. *See, e.g.*, *Response* [#98] at 12-14. First, Plaintiff argues at length that Defendants should have used less force with her because her license plates displayed disability emblems. *See, e.g.*, *Response* [#97] at 10-14. However, there is no evidence that the officers had knowledge or understanding of Plaintiff's purported disability beyond this single clue. Although it may be reasonably inferred that Defendant Clifford saw the emblem when he checked Plaintiff's license plate number in the law enforcement database, there is no evidence that Defendant Fahlsing, who arrived in a separate vehicle, ever looked at the license plate and became aware of the emblem.

In addition, there is no indication that the officers knew what kind of disability Plaintiff had, or even whether it was mental or physical. According to documentation provided by Plaintiff, the handicapped license plate pertained to a severe limitation in her "ability to walk due to an arthritic, neurological, or orthopedic condition." [#98-1] at 4. However, there is no indication in the record that the officers had actual or constructive knowledge that the disability emblem or Plaintiff's license plate was related to this type of disability. For example, there is no evidence that Plaintiff exhibited any outward visible signs of disability,

such as wearing a brace.   Thus, there is no evidence that Plaintiff had a preexisting condition that was visible to any officer.   The "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Havens*, 783 F.3d at 783 (quoting *Estate of Larsen*, 511 F.3d at 1259).   In short, there is no indication that Plaintiff's disability was actually or constructively known to either officer before they used force against her.[13]

"A use of force that might be reasonable against an apparently healthy individual may be unreasonable when employed against an individual whose diminished capacity should be apparent to a reasonable police officer." *Aldaba*, 777 F.3d at 1157.   At most, construing the evidence in a light most favorable to Plaintiff, the Court finds that Defendant Clifford may have had constructive knowledge from the disability emblem on the license plate that Plaintiff may have had an unidentified disability.   However, in light of the evidence that only one officer may have had this constructive knowledge, and in light of the lack of evidence that Defendant Clifford knew what Plaintiff's actual disability was or could be, the Court finds that, although Plaintiff's compromised physical condition reduces the level of

---

[13] Plaintiff alleges in her Responses that she told Defendants Clifford and Fahlsing that she was scheduled for neck surgery, and that she had fibromyalgia and chronic pain. *See Response* [#97] at 5; *Response* [#98] at 5. However, neither of Plaintiff's Responses [#97, #98] are sworn and therefore may not be treated as affidavits for the purpose of resolving the Motions for Summary Judgment. *Hall*, 935 F.2d at 1111 (stating that a pro se litigant's response may be treated as an affidavit if it alleges facts based on personal knowledge and it has been sworn under penalty of perjury).   Unsworn statements do not create sufficient grounds to oppose summary judgment. *Hayes v. Mariott*, 70 F.3d 1144, 1148 (10th Cir. 1995).   Plaintiff has failed to direct the Court's attention to any evidentiary support that she made these statements to the officers, and she has not directed the Court's attention to any evidence that otherwise connects these allegations to the disability emblem on her vehicle's license plate. Further, there are neither unsupported allegations nor supported facts that she ever told the officers about the severe limitation in her "ability to walk due to an arthritic, neurological, or orthopedic condition," the disability for which she was allegedly provided the emblems for her license plates.   [#98-1] at 4.

force that a reasonable officer might use, this factor only warrants a slight reduction in the amount of force that a reasonable officer in Defendant Clifford's position would have used against Plaintiff.

Accordingly, with this background in mind, the Court examines the actions taken by each of the individual Defendants.

### i.   Defendants Wagner and Current

The evidence against Defendants Wagner and Current is sparse.  These two Defendants approached Plaintiff's car on the passenger side of the vehicle. *Ex. A, Depo. of Pl.* [#92-1] at 184.  They banged on Plaintiff's car with their batons. *Id.*  After Plaintiff was removed from her vehicle and placed on the ground, Defendant Wagner was on one side of Plaintiff and Defendant Current was on her other side, although Plaintiff is not sure which officer was on which side. *Id.* at 225-26.  One of the female officers (Plaintiff does not know which one) verbally said something to the effect that she was holding Plaintiff's lower body, legs, or feet. *Id.* at 226.

Other than holding Plaintiff's lower body, legs, or feet after Plaintiff was already maneuvered to the ground, there is no evidence before the Court demonstrating that either Defendant Wagner or Defendant Current employed any force against Plaintiff.  There is no evidence that Plaintiff suffered any injury from Defendant Wagner's or Defendant Current's minimal use of force in holding her lower body, legs, or feet.  There is no evidence that Plaintiff suffered any pain from Defendant Wagner's or Defendant Current's minimal use of force in holding her lower body, legs, or feet.  Plaintiff must provide sufficient facts to find that Defendants used greater force than was necessary against her. *Cortez*, 478 F.3d at 1129 n.25.  However, given the undisputed evidence of the minimal use of force by these

two Defendants, the lack of evidence regarding injury or pain from the employment of this minimal force,[14] and the fact that Plaintiff appeared to be passively resisting arrest, the Court cannot find that there is a sufficient factual dispute about whether either Defendant Wagner or Defendant Current employed excessive force against Plaintiff.[15]  *Cortez*, 478 F.3d at 1128 (stating that there is "little difficulty concluding that a small amount of force, like grabbing Rick Cortez and placing him in the patrol car, is permissible in effecting an arrest under the Fourth Amendment").  They are therefore entitled to qualified immunity. *See Plumhoff*, 134 S. Ct. at 2023.

Accordingly, the Court **recommends** that judgment enter in favor of Defendant Wagner and Defendant Current on Plaintiff's Fourth Amendment claim of excessive force.

## ii.    Defendants Clifford and Fahlsing

Plaintiff provides more evidence regarding the actions of Defendants Clifford and Fahlsing.  After she was stopped, these two Defendants approached Plaintiff's car on the driver's side of the vehicle.  *Ex. A, Depo. of Pl.* [#92-1] at 184.  They banged on Plaintiff's car with their batons.  *Id.*  Defendant Clifford told her to get out of her car at least three times.  *Id.* at 210.  Both Defendants yelled at her, and Defendant Fahlsing threatened to break her window.  *Id.* at 188.  After asking Plaintiff to exit her vehicle at least three times, Defendant Fahlsing shattered the driver's side window with his baton.  *Id.* at 211.  When that happened, Plaintiff immediately felt like she had glass in her left eye and in her mouth,

---

[14]  As noted above, the only non-de minimis injuries for which there is evidence are the tear in Plaintiff's shoulder and the abrasion of her eye.  There is no evidence that either Defendant Wagner or Defendant Current engaged in any action that could have impacted Plaintiff's shoulder or eye in any way.

[15]  Plaintiff has not advanced a theory of failure to intervene and prevent the use of force against any Defendant.  *See, e.g.*, *Casey*, 509 F.3d at 1283.

and she began screaming and praying as several pairs of arms reached into her vehicle,

undid her seatbelt, and pulled her out through the window by her arms and her hair. *Id.* at

224-25.  She says she was then thrown to the glass-covered asphalt and suffered some

cuts.[16]  *Id.* at 229-30.

The circumstances in this case are similar in many ways to those considered by the

Tenth Circuit Court of Appeals in *Latta v. Keryte*, 118 F.3d 693, 701 (10th Cir. 1997):

> The officers, not knowing whether Mr. Latta was armed, had their weapons
> drawn as they approached the vehicle.  Mr. Latta still refused to get out of the
> car.  Officer Keryte broke the window of the car to unlock the door.  Mr. Latta
> grabbed the steering wheel and resisted the officers as they tried to remove
> him from the car.  When the officers finally removed him from the vehicle,
> they cuffed his hands and legs and placed him on the ground.  Later, when
> the officers suspected that Mr. Latta was hyperventilating, they called an
> ambulance.

However, there are also a number of differences between the circumstances present in

*Latta* and those in the instant case:

> Although Mr. Latta was never formally arrested for any crime, a reasonable
> officer at the time would have concluded that Mr. Latta posed a danger to
> himself and other motorists.  He was swerving on the road, which caused the
> officers to believe that he was possibly intoxicated.  Officer Keryte attempted
> to stop Mr. Latta by using his emergency equipment, bumping the car from
> behind, and shooting out his tires.  After refusing to pull over, Mr. Latta finally
> stopped at the roadblock.

*Id.*  Here, there is no indication that Plaintiff posed a danger to herself or other motorists,

and she voluntarily pulled over in response to the activated lights on Defendant Clifford's

patrol car.

The circumstances of this case are also similar to *Mecham v. Frazier*, in which the

---

[16]  As noted above, while in the Responses [#97, #98] Plaintiff asserts more actions taken
by Defendants Clifford and Fahlsing and far greater injuries than those here listed, she has not
provided evidence in support of these additional statements.

Tenth Circuit determined that the officers' use of force in the form of pepper spray, "while unfortunate, was not excessive." *Mecham*, 500 F.3d at 1205.  In that case, as here, the plaintiff was subjected to a justified traffic stop.  *Id.* at 1204.

> Nevertheless, what should have been a routine encounter turned into a fifty-minute ordeal requiring arrest.  Before the officers used force to remove Mecham from her car, the following events occurred. (1) Mecham balked at Frazier's report that her Arizona license was suspended—insisting it was valid—and then contributed to the unresolved mystery about her Utah license on file by denying its existence.  (2) She then persisted in using a cell phone during the encounter despite Frazier's instructions to put it down.  (3) She ignored his repeated warnings to get out of the car under penalty of arrest, and forced Frazier to call a tow truck and backup support.  (4) During this encounter, she remained in the driver's seat with the keys to the car, exercising control of the car at all times.  (5) When backup officer Johnson arrived on the scene, she nonetheless ignored his additional entreaties to exit the car.  (6) Then, she was given a last opportunity to cooperate when the officers told her point blank that further resistance would be met with arrest.  (7) Mecham, again, refused and the officers followed through with their promised response.  In these circumstances, it was a foregone conclusion that the officers would have to use force to make the arrest.

*Id.* at 1204-05 (footnote omitted).

As discussed throughout this Recommendation, the majority of these circumstances are present in the instant case.  However, several factors distinguish this case.  First, while in *Mecham* there was a "fifty-minute ordeal" between the stop and the use of force, here, while the time line is not perfectly clear, Plaintiff's evidence indicates that she was given a much shorter time frame in which to comply with the instructions of law enforcement personnel.  Second, while in *Mecham* the plaintiff was warned of the consequences of her refusal to cooperate, here the evidence does not clearly support a finding that she was warned that, absent compliance, her window would be broken and she would be forcibly removed in order for law enforcement to effectuate the arrest.  Third, while in *Mecham* the plaintiff refused to exit the vehicle, here Plaintiff's evidence supports that she told

Defendants Clifford and Fahlsing that she would exit the vehicle if they promised not to hurt her.  The evidence presented, therefore, as seen in a light most favorable to Plaintiff, indicates that this justified traffic stop escalated quickly to the point where Defendants Clifford and Fahlsing may have prematurely used force against Plaintiff by shattering the car window and then pulling her out of the window by her hair and arms.

In consideration of the foregoing, the Court finds that there is a genuine issue of material fact regarding whether Defendants Clifford and Fahlsing employed excessive force against Plaintiff under the circumstances here present in violation of Plaintiff's Fourth Amendment rights.

### 2.    Clearly Established Law

Since "a [constitutional] violation [by Defendants Clifford and Fahlsing] could be made out on a favorable view of [Plaintiff's] submissions," the second part of the qualified immunity inquiry is "to ask whether the right was clearly established." *Saucier*, 533 U.S. at 201.   "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer [in the defendants' position] that his conduct was unlawful in the situation he confronted." *Id.* at 202.  In order for a constitutional right to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clear weight of authority from other Circuits must establish the constitutional right. *Medina v. City and Cnty. of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).  In other words, there must be case law in which a constitutional violation was found based upon similar conduct. *See Callahan v. Millard Cnty.*, 494 F.3d 891, 903 (10th Cir. 2007).

The Supreme Court has reaffirmed that while a constitutional violation must be found

on similar conduct, officials can still be on notice that their conduct violates established law even in novel factual circumstances. *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). "Although earlier cases involving 'fundamentally similar' facts can provide especially strong support for a conclusion that the law is clearly established, they are not necessary to such a finding." *Id.* "General statements of the law are not inherently incapable of giving fair and clear warning, and in other instances a general constitutional rule already identified in the decisional law may apply . . . to the conduct in question even though the very action in question has not previously been found unlawful." *Id.* (internal citation and quotations omitted). "Whether a constitutional right was clearly established at the time an alleged violation occurred is a 'quintessential' example of a purely legal determination . . . ." *Fancher v. Barrientos*, 723 F.3d 1191, 1200 (10th Cir. 2013).

> [B]ecause excessive force jurisprudence requires an all-things-considered inquiry with "careful attention to the facts and circumstances of each particular case," *Graham*, 490 U.S. at 396, there will almost never be a previously published opinion involving exactly the same circumstances. We cannot find qualified immunity wherever we have a new fact pattern. Indeed, the Supreme Court has warned that "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002). The *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional.

*Fancher*, 723 F.3d at 1201 (quoting *Casey v. City of Fed'l Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (citations and quotations omitted)). As the *Aldaba* court recently stated, "we use a sliding scale in which the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." 777 F.3d at 1159 (citation and internal quotation marks omitted).

As discussed above, the circumstances leading up to this incident required a reasonable officer to use a reduced amount of force against Plaintiff. However, even in light of that discussion, the Court finds that Defendants Clifford and Fahlsing did not violate a clearly established constitutional right. The Tenth Circuit in *Aldaba* noted in the context of tasing that:

> On one end of the spectrum, [*Hinton v. City of Elwood*, 997 F.2d 774 (10th Cir. 1993),] stands for the uncontroversial proposition that a misdemeanant who ignores an officer's orders to stop, shoves an officer, and then actively and openly resists arrest by, among other things, biting the officer, has no clearly established right not to be tased during the struggle. 997 F.2d at 781. At the other end of the spectrum, [*Casey v. City of Fed. Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007),] clearly established that an officer could not tase a non-violent misdemeanant who appeared to pose no threat and who was given no warning or chance to comply with the officer's demands. 509 F.3d at 1281-82.

777 F.3d at 1160. Here, a far lesser degree of force than tasing was employed by the officers. Plaintiff, for whom an arrest warrant had been issued, actively resisted arrest by failing to comply with officers' demands despite multiple warnings. *See id.* at 1158. However, she was a non-violent individual under arrest for a low level crime who appeared to pose no immediate threat. Thus, the present case appears to fall somewhere in the middle of this spectrum.

The Tenth Circuit's discussion in *Segura v. Jones*, 259 F. App'x 95, 103-04 (10th Cir. 2007), is instructive:

> The second basis for excessive force raised by Ms. Segura is that Officer Jones pushed her against the wall in order to place the handcuffs on her. Ms. Segura stated that her face hit the wall when Officer Jones was placing the handcuffs on her, although there were no visible marks, cuts or abrasions on her face. Also, Ms. Segura stated that Officer Jones exacerbated her back injury when he pushed her against the wall. She took pain medication that evening to allay her discomfort. The injury stemmed from a previously herniated disk in her back that was last re-injured while she was gardening.

The case relevant to this claim is *Saucier v. Katz*. 533 U.S. 194 (2001)[, *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)].  That case involved the shoving of an elderly man, with a visible leg brace on, into the back of a police van.  *Saucier*, 533 U.S. at 198.  The Court held that pushes and shoves must be adjudged under the Fourth Amendment reasonableness requirement.  *Id.* at 209.  The Court went on to say that the officer "did not know the full extent of the threat respondent posed or how many other persons there might be who, in concert with respondent, posed a threat . . ."  *Id.* at 208.  The officer's lack of knowledge in *Saucier v. Katz* is similar to Officer Jones's circumstances in the instant case.  Fourth Amendment reasonableness analysis "must embody allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Graham*, 490 U.S. at 396-97.

In *Saucier*, the Court held that the officer who pushed the suspect was entitled to qualified immunity because his actions did not violate clearly established law.  533 U.S. at 208-09.  There the suspect was wearing a large and visible leg brace.  In the instant case, Officer Jones had no way of knowing that Ms. Segura had a previous back injury that occasionally could be exacerbated.  The shove in *Saucier* was also of a more forceful nature than that in the instant case because it forced the suspect to the ground, whereas here, Ms. Segura's face pressed against the wall, leaving no mark or wound.  In *Saucier*, the plaintiff argued that had he not caught himself, he would have sustained an injury.  Here, Ms. Segura provides no evidence of an injury to her face and stated that she needed pain medication for one evening to allay her back injury due to the push.  Since the officer in *Saucier* was entitled to qualified immunity where there was a visible preexisting condition, Officer Jones is entitled to qualified immunity where there was no cognizable indication of an already existing back injury.  Further, the record does not bear out Ms. Segura's claim that the injuries to her face were substantial enough to be more than de minimis.

In sum, we find that the district court erred in denying Officer Jones's qualified immunity summary judgment motion with respect to Ms. Segura's 42 U.S.C. § 1983 excessive force claim as to . . . the push.

Second, in *Valencia v. De Luca*, 2015 WL 3461365, at *5, the Tenth Circuit Court

of Appeals recently addressed a Fourth Amendment excessive force claim in the context

of removing a juvenile arrestee from his vehicle.  In that case, the court noted "that the

officers had the lawful authority to remove Mr. Valencia from the car and that the amount

of force used was minimal in comparison with more drastic techniques, such as the use of pepper spray, tasers, or batons . . . ."  *Id.*  Mr. Valencia would not get out of his vehicle voluntarily and had to be forcibly extracted.  *Id.*  The Tenth Circuit found that "it is beyond dispute that Mr. Valencia was physically maintaining himself in the car (the exact manner is immaterial), and he points to no clearly established law that would suggest to a reasonable officer that pulling him out of his car by his arms and, he claims, head and neck, constituted excessive force."  *Id.*  Similarly to Plaintiff's claim here, "Mr. Valencia averred that there are medical records showing he suffered serious physical and emotional injuries, [but] he provided no evidence of the nature or extent of any injuries such that they might bear on the reasonableness of the force used."  *Id.* at *5 n.7.

Further, the Court notes that, although distinguishable on the facts, the circumstances discussed above in the Tenth Circuit cases of *Latta v. Keryte* and *Mecham v. Frazier* are similar enough to the facts of this case such that a reasonable officer may not have believed that he was violating a clearly established right.  As noted earlier, the "reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Havens*, 783 F.3d at 783 (quoting *Estate of Larsen*, 511 F.3d at 1259).  In addition, Plaintiff has failed to direct the Court's attention to any case that demonstrates these officers violated a clearly established right under the facts alleged here.  In short, as in *Mecham*, there is no genuine dispute that the officers' use of force, "while unfortunate, was not excessive" to the point of violating Plaintiff's clearly established right or rights.  *Mecham*, 500 F.3d at 1205.

Based on the foregoing, the Court finds that Defendants Clifford and Fahlsing did

not violate a clearly established right and that they are therefore entitled to qualified immunity. Accordingly, the Court **recommends** that the Motion [#90] be **granted** to the extent these two Defendants seek entry of summary judgment on this claim.

## C. *Monell* Claim Against the City of Lakewood

This claim requires Plaintiff to provide evidence demonstrating that there was a constitutional violation committed by a municipal employer, and that a municipal policy or practice was the "moving force behind the deprivation." *Myers v. Bd. of Cnty. Comm'rs of Okla. City*, 151 F.3d 1313, 1316 (10th Cir. 1998). Thus, a plaintiff must first show (1) the existence of a municipal custom or policy and (2) a direct and causal link between the custom or policy and the violation alleged. *Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996). A plaintiff may demonstrate the existence of a municipal policy or custom by providing evidence of: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of subordinates; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused. *Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010).

In connection with this claim, Plaintiff conclusorily states, for example: (1) "with reference to the City, Defendants . . . failed to train the Defendant Officers on an annual basis with the proper police procedures relative to dealing with physically and mentally disabled persons;" (2) "[a]s a result of the Defendant Officers' lack of knowledge and/or proper training regarding the treatment of a disabled person, Plaintiff sustained injuries;" (3) "the deprivation of Plaintiff's constitutional rights . . . occurred during or as a

consequence of the execution of the policies, customs or usages of the City of Lakewood representing deliberate or conscious choice of the Defendant municipality;" and (4) "[t]he Defendants also adapted or maintained a deliberate indifference to the rights and interests of the Plaintiff . . . which ratify unlawful acts and omissions by Defendant Officers." *Response* [#97] at 2, 7, 17.  Plaintiff does not direct the Court's attention to any evidence in the record that supports these conclusory statements or this claim.  *See* Fed. R. Civ. P. 56(c)(1).

Accordingly, the Court **recommends** that judgment enter in favor of the City of Lakewood on Plaintiff's *Monell* claim.

## IV.  Conclusion

For the foregoing reasons, the Court  respectfully **RECOMMENDS** that Defendants Clifford, Fahlsing, Wagner, and the City's Motion [#90] be **GRANTED** and that Defendant Current's Motion [#92] be **GRANTED**.

IT IS **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned.  A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P.  72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review.  *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th

Cir. 1996).

Dated July 23, 2015, at Denver, Colorado.   BY THE COURT:

Kristen L.  Mix
United States Magistrate Judge