**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 13-cv-1642-WJM-KLM

LATONYA DENISE DAVIS,

    Plaintiff,

v.

TODD CLIFFORD, Lakewood Police Officer,
TODD FAHLSING, Lakewood Police Sergeant,
MICHELE WAGNER, Lakewood Police Sergeant,
MICHELLE CURRENT, Lakewood Police Sergeant, and
CITY OF LAKEWOOD, jointly and severally,

    Defendants.

---

**ORDER ADOPTING JULY 23, 2015 RECOMMENDATION OF MAGISTRATE JUDGE AND GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

---

This matter is before the Court on United States Magistrate Judge Kristin L. Mix's Recommendation dated July 23, 2015 ("Recommendation"), which recommended granting summary judgment in favor of all Defendants. (ECF No. 109.) The Recommendation is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Davis filed a timely Objection to the Recommendation ("Objection"). (ECF No. 110.)[1] For the reasons set forth below, Davis's Objection is overruled, the Recommendation is adopted, Defendants' summary judgment motions (ECF Nos. 90, 92) are granted, and Davis's claims are dismissed with prejudice.

---

[1] Davis's Objection is titled a "Motion to Alter or Amend Summary Judgment," but it is, in substance, a Rule 72(b)(2) objection. Davis also filed a separate "Memorandum of Law in Support" (ECF No. 111), which the Court has treated as part of the Objection.

## I.  STANDARD OF REVIEW

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommendation] that has been properly objected to." In the absence of a timely and specific objection, "the district court may review a magistrate . . . [judge's] report under any standard it deems appropriate."  *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)); *see also* Fed. R. Civ. P. 72 Advisory Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record.").  An objection to a recommendation is properly made if it is both timely and specific.  *United States v. One Parcel of Real Property Known as 2121 East 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996).  An objection is sufficiently specific if it "enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute."  *Id.* (quoting *Thomas*, 474 U.S. at 47).  In conducting its review, "[t]he district court judge may accept, reject, or modify the recommendation; receive further evidence; or return the matter to the magistrate judge with instructions."  *Id.*

Because Davis is proceeding *pro se*, the Court must liberally construe her pleadings.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1243 (10th Cir. 2007).  The Court, however, cannot act as an advocate for Davis, who must still comply with the fundamental requirements of the Federal Rules of Civil Procedure.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

## II.  FACTUAL BACKGROUND

### A.    The State of the Record

The Magistrate Judge had an understandably difficult time sorting through the parties' factual allegations because Davis's only evidentiary citation was a single footnote stating that she "relies on the CD of the Deposition Proceedings . . . together with any and all medical records and reports relating to [her alleged] injuries . . . ." (ECF No. 97 at 2 n.1; ECF No. 98 at 2 n.1.)  As the Magistrate Judge noted (ECF No. 109 at 2 n.5), this violates Federal Rule of Civil Procedure 56(c)(1)(A): "A party asserting that a fact . . . is genuinely disputed must support the assertion by * * * citing to particular parts of materials in the record . . . ."  The Magistrate Judge had no duty to search the record on Davis's behalf.  *See id.* 56(c)(3) ("The court need consider only the cited materials . . . .").  Thus, the Magistrate Judge was entirely justified in "not do[ing] [Davis's] job for her by organizing her submissions and researching every document to find support for the statements made in her briefing."  (ECF No. 109 at 2 n.5.)

Davis's failure to support her factual allegations led the Magistrate Judge to find that no evidence supported certain important allegations.  In her Objection, Davis apologizes for the "inconvenience" she caused (ECF No. 110 at 1) and restates certain factual allegations with citations to exhibits attached to the Objection itself (*see generally* ECF Nos. 110 through 110-10).  In the interests of justice, the Court will consider Davis's evidentiary citations as the Court formulates a summary of the facts as seen in the light most favorable to Davis.

**B.     Davis's February 25, 2012 Encounter with Lakewood Police**

On the night of February 25, 2012, Davis was driving east on Alameda Avenue in Lakewood, Colorado. (ECF No. 109 at 3.) Defendant Todd Clifford, a Lakewood police officer on patrol in his police cruiser, ran Davis's license plate number into a database and learned that the registered owner of the vehicle was subject to an arrest warrant for driving with a suspended license on account of failure to prove insurance. (*Id.*)[2] Based on this information, Clifford activated his lights and siren, and Davis responded by pulling into the well-lit parking lot of a nearby credit union. (*Id.* at 4.)

Clifford followed Davis into the parking lot, as did Defendant Michele Wagner, a Lakewood police sergeant who happened to be driving by at the same time. (*Id.*) By happenstance, Defendants Todd Fahlsing and Michelle Current, both Lakewood police sergeants, were already in that parking lot, and so they came over to help as well. (*Id.*) They arranged their police cruisers such that Davis's vehicle was blocked in on all sides but the driver's side. (*Id.*)[3]

---

[2] In her Objection, Davis says she "can prove that she did not have a warrant for arrest" (ECF No. 110 ¶ 1), citing all of her attached Exhibit A (ECF No. 110-1). The Court has reviewed Davis's Exhibit A (comprising various court documents) and has found nothing supporting the claim that no warrant existed. The Court therefore rejects this assertion. Davis also says that her "insurance, registration and license was [*sic*] current" at that time (ECF No. 110 ¶ 3), citing all of her attached Exhibit C (ECF No. 110-3). The court has reviewed Davis's Exhibit C (comprising various license, insurance, and registration documents) and finds that it arguably supports her assertion. However, whether these items were current (particularly her insurance) does not inform whether Davis had proven to the state that they were current, and therefore does not inform whether the arrest warrant was proper. In any event, the Court's review of Davis's responses to Defendants' summary judgment motions (ECF Nos. 97, 98) reveals no argument that the warrant was nonexistent or invalid. "Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

[3] In her Objection, Davis claims that there were between 19 and 22 police cruisers and 38 police officers in the parking lot, and that most of the police officers had their guns drawn on

4

Davis turned off her car but left the keys in the ignition, kept her seatbelt on, and only opened her driver's side window about 1.5 inches. (*Id.*; ECF No. 97 ¶ 7.) Davis then heard batons banging on her car and she noticed multiple police officers walking around it. (ECF No. 109 at 4.) Clifford and Fahlsing approached on the driver's side while Wagner and Current approached on the passenger side. (*Id.*)

A heated conversation ensued. On at least three occasions, Clifford announced that Davis was under arrest and that she should immediately exit the car. (*Id.* at 4–5.) At some point during these demands, Davis told Clifford and Fahlsing that she would comply if they promised not to hurt her. (ECF No. 99 ¶ 13.)[4] Eventually, Fahlsing shattered Davis's driver's side window with his baton. (ECF No. 109 at 5.) Davis immediately felt what she believed to be glass in her left eye. (*Id.*)

At this point, Clifford and Fahlsing reached into Davis's vehicle, disengaged her seatbelt, and pulled her out of the vehicle through the window by her arms and hair.

---

her vehicle. (ECF No. 110 ¶¶ 1, 18, 26.) The Court need not address the evidence Davis proffers in support of this claim nor whether it is too fantastic to be taken seriously because the Court finds that it has no relevance to the events that subsequently played out.

[4] In her summary judgment response briefs, Davis alleged that she also told Clifford and Fahlsing that she was scheduled for neck surgery and she suffers from fibromyalgia and chronic pain. (ECF No. 97 at 5 ¶ 13; ECF No. 98 at 5 ¶ 13.) The Magistrate Judge refused to consider this allegation because Davis cited no supporting evidence. (ECF No. 109 at 25 n.13.) Davis's Objection does not specifically challenge this portion of the Magistrate Judge's Recommendation. In a general narrative of the incident, however, she states that she "told Defendants Clifford and Fahlsing that she would get out of the car if they promised not to hurt her because she was scheduled for neck surgery on March 8, 2012 and she also has fibromyalgia and chronic pain." (ECF No. 111 at 4.) To the extent this statement was meant as an objection, the Court finds it insufficiently specific, particularly because Davis again cites no supporting evidence. Moreover, having independently reviewed the excerpts from her deposition that she attached as Exhibit G to her Objection (ECF No. 110-7), the Court notes that Davis tells her side of the story in these excerpts but does not say that she informed Clifford and Fahlsing of her various medical conditions.

(*Id.*) Davis was then thrown to the ground on top of shattered glass from her car window, causing her to suffer some cuts. (*Id.*) One of the female officers (either Wagner or Current) then pinned Davis's legs and feet as Davis struggled against being handcuffed. (*Id.*)[5] From there, Davis was forcefully placed in a police cruiser, began hyperventilating, was taken to a local medical center for treatment, released to the custody of Lakewood police, and spent approximately two days in the Jefferson County Detention Center. (ECF No. 97 at 5–6, ¶¶ 17–22.)

**C.     Davis's Injuries**

Davis claims that Defendants violated the Fourth Amendment by using unreasonable force under the circumstances, which allegedly inflicted numerous injuries. (*See* ECF No. 110 ¶ 48.) Determining precisely which injuries Davis had properly alleged was an important part of the Magistrate Judge's later analysis of whether any Defendant violated the Fourth Amendment. The Magistrate Judge effectively sorted Davis's claimed injuries into three categories: (1) injuries properly supported by evidence; (2) injuries not properly supported by evidence; and (3) *de minimis* (non-actionable) injuries. The Court will discuss each category in turn.

   1.     <u>Injuries Properly Supported by Evidence</u>

Davis claims that the glass from shattering her window scraped her left eye and Defendants' subsequent rough treatment led to a tear in her right shoulder soft tissue. (ECF No. 110 ¶ 50.) The Magistrate Judge found that one medical report from a few

---

[5] Davis apparently does not know whether Wagner or Current held her legs, but Current wrote in her incident report, "I held her feet down until she was actually cuffed." (ECF No. 110-2 at 11.)

days after the incident noted "a loss of superficial tissue" to one of Davis's eyes (otherwise unspecified). (ECF No. 109 at 19 (internal quotation marks omitted).) The Magistrate Judge further found that a report from an independent medical examiner (one of Defendants' summary judgment exhibits) supported Davis's shoulder injury claim because the examining physician noted a post-incident MRI showing a tear of the labrum that did not exist on a pre-incident MRI. (ECF No. 109 at 20.) The Magistrate Judge therefore found "a genuine issue of material fact with respect to [those two] injuries, whether they are more than de minimis, and whether they were caused by Lakewood police on February 25, 2012." (*Id.*; *see also id*. at 27 n.14.) This finding runs against Defendants and Defendants filed no objection. Seeing no plain error on the face of it, the Court adopts this finding. Viewed in the light most favorable to Davis, the evidence therefore shows that Defendants caused a labral tear in Davis's right shoulder and an abrasion in her left eye.

  2. <u>Injuries Not Properly Supported by Evidence</u>

Davis claimed (and continues to claim) numerous other injuries:

- Bell's palsy;
- 30% loss of hearing in her right ear;
- "[a]dditional injuries incurred to the neck";
- "removal [of?] the humerus";
- bulging discs in the lumbar and sacral regions;
- meniscus and cartilage injuries to both knees;
- migraines;
- chronic aches and pains;

- PTSD;
- high blood pressure;
- irritable bowel syndrome; and
- various forms of mental and emotional distress.

(ECF No. 110 ¶ 50.)

The Magistrate Judge could locate no supporting evidence for these injuries and therefore found that they could not be considered at summary judgment. (ECF No. 109 at 5 n.7, 13–15.) In her Opposition, Davis attaches certain medical records as her Exhibits E and F (ECF Nos. 110-5, 110-6), each of which the Court will discuss in turn.

### a. *Medical Release Forms*

Davis attaches release forms showing that she gave Defendants' counsel full access to her medical records. (*Id.* at 2–5.) However, Defendants' access to Davis's medical records does not excuse Davis's obligation to support her summary judgment allegations with specific, admissible evidence.

### b. *Lutheran Medical Center Report*

Davis next attaches a Lutheran Medical Center examination record from two days after the incident with police. (*Id.* at 6–7.) The examining physician reported Davis's complaints of "neck pain[,] back pain[,] chest pain[,] and left forearm pain. She also believes she has [a] foreign body in her left eye[,] specifically glass from her windshield [*sic*] being shattered." (*Id.* at 6.) Regarding the claimed pain, the physician's evaluation is ungrammatical: "She is reproducible chest pain neck pain back pain and shoulder pain." (*Id.* at 6–7.) The Court assumes a dictation error and that the

physician actually said "*has* reproducible . . . pain" or "is reproducible *for* . . . pain," particularly because the report later states that "[h]er pain improved tremendously with [a] pain medication IV." (*Id.* at 7.) Regarding glass in Davis's eye, the physician stated that he found no foreign body and (contrary to Davis's other evidence) no abrasion either. (*Id.*) The physician also noted a left forearm bruise "without underlying pain." (*Id.*)

To the extent Davis intends this report to substantiate her claims of *chronic* pain, it is not enough. As discussed below at Part II.C.2.d, a claim of chronic pain raises serious questions of medical causation for which Davis has submitted no evidence in her favor, especially given that for twelve years prior to the incident, Davis suffered chronic pains from a bus accident.

To the extent Davis intends this report only to substantiate lingering acute pain, the Court finds that it would be no more than a *de minimis* injury and therefore not actionable. (See Part II.C.3, *infra*.) Thus, the Lutheran Medical Center report provides no basis for rejecting or modifying the Magistrate Judge's Recommendation.

    c.    *Tabular Summaries*

Davis next attaches a copy of what was also filed as ECF No. 38, a proposed amendment to the scheduling order with an exhibit containing a three-column table showing medical expenses incurred from February 25, 2012 through September 19, 2013. (ECF No. 110-5 at 8–10.) The first column lists the medical provider that submitted the bill, the second column lists the date of service, and the third column lists the amount charged. This table, however, says nothing about which service was

performed, and nothing about medical causation.  (*See* Part II.C.2.d, *infra*.)

Following this table, Davis attaches another three-column table (previously filed as ECF No. 51-9) similar to the first, but substituting a brief description of the procedure performed in place of the amount charged.  (ECF No. 110-5 at 12–15.)  This table still does not inform the medical causation question.  Accordingly, neither table provides a basis for rejecting or modifying the Magistrate Judge's Recommendation.

d.   *Endorsement of Expert Witnesses*

Davis admits that she "has been continuously under doctors' care since March 30, 2000 as a result of sustaining severe injuries while a passenger on a bus that was in an accident." (ECF No. 97 at 7, ¶ 28.)  The Magistrate Judge therefore perceived that Davis's major hurdle would be proving that Defendants' actions caused her claimed injuries.  The Magistrate Judge quoted extensively from an independent medical examiner's report stating that essentially all of the physical and mental ailments of which Davis now complains are the same ailments of which she complained before February 25, 2012, on account of the bus accident.  (ECF No. 109 at 15.)  The Magistrate Judge found that Davis had failed to present countervailing evidence of causation stemming from her police encounter.  (ECF No. 109 at 13.)

In response, Davis attaches to her Objection what was previously filed as ECF Nos. 48 and 51-8, titled "Endorsement of Expert Witnesses" ("Endorsement").  (ECF No. 110-5 at 16-18.)  This document lists nine expected experts, six of whom are medical professionals (the rest are use-of-force experts).  (*Id.*)  For each medical professional, it contains a one-sentence summary of the injuries he or she is expected to address.  (*Id.*)  Two of those summary sentences also contain a brief conclusion

regarding causation and continuing effect. (*Id.* at 16.)

Medical causation is usually a matter for expert testimony. *See, e.g.*, *Gidley v. Oliveri*, 641 F. Supp. 2d 92, 106 (D.N.H. 2009). Davis seems to believe that the Endorsement qualifies as her expert disclosure under Federal Rule of Civil Procedure 26(a)(2). As explained below, although it perhaps satisfies Rule 26(a)(2)(A)'s requirement to name those experts, the Court finds that it does not satisfy Rule 26(a)(2)(B)'s and (C)'s requirement to provide an expert report or adequate summary of the expert's expected testimony. Thus, even if the Magistrate Judge had this evidence before her, it would have made no difference.

Rule 26(a)(2)(B) requires that "retained or specially employed" experts must file a detailed report explaining their opinions and the facts and data on which they base those opinions. Rule 26(a)(2)(C) requires all other experts to file a "summary of the facts and opinions to which the witness is expected to testify." Rule 26(a)(2)(C). This latter rule often applies to treating physicians. *See* Fed. R. Civ. P. 26, Advisory Committee Commentary to 1993 Amendment ("A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report."). "However, when a [treating physician] opines as to causation, prognosis, or future disability, the physician is going beyond what he saw and did and why he did it and is giving an opinion formed because there is a lawsuit." *Davis v. GEO Grp.*, 2012 WL 882405, at *2 (D. Colo. Mar. 15, 2012). In that circumstance, the physician must submit a Rule 26(a)(2)(B) report. *Id.*

11

The Endorsement suggests that at least two of Davis's experts plan to give an opinion regarding causation, prognosis, and future disability. Accordingly, a one-sentence conclusory summary of those experts' expected opinions is not admissible to rebut Defendants' lack-of-causation evidence. *See also* Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").

To the extent any of Davis's "endorsed" medical professionals were intended solely as Rule 26(a)(2)(C) experts, the Court still finds that the Endorsement is insufficient. Although Rule 26(a)(2)(C) requires less detail than 26(a)(2)(B), the party proffering the expert cannot fall back on one-sentence conclusory summaries. *See, e.g.*, *Davis*, 2012 WL 882405, at *3 ("Having reviewed the disclosure of Dr. Miles, the court finds Plaintiff has not met [the Rule 26(a)(2)(C)] requirement. Plaintiff merely states that Dr. Miles 'is expected to offer testimony about his evaluation of Plaintiff and Plaintiff's emotional distress related to his work for and discharge from employment at Geo, Inc.'"). Moreover, it is no excuse that Davis handed over all of her medical records. *See Smothers v. Solvay Chemicals, Inc.*, 2014 WL 3051210, at *5 (D. Wyo. July 3, 2014) (citing numerous cases in which courts have held that referring the opposing party to medical records does not satisfy Rule 26(a)(2)(C)).

Given these failings, the Endorsement provides no basis to reject or modify the Magistrate Judge's Recommendation.

    e. *Mental Health Records*

Finally, Davis attaches records from visits to her mental health providers. (ECF No. 110-6 at 2–19.) These treatment notes are certainly evidence that Davis reported mental and emotional distress following the February 25, 2012 incident, and that Davis attributed that distress to the incident (as opposed to the bus accident). Nonetheless, these records run into the same problems just discussed regarding the Endorsement.

Davis is not seeking to establish simply that the February 25, 2012 incident caused short-term emotional distress, but that it has led to long-term emotional disability. But again, medical causation almost always requires expert testimony, especially when pre-existing conditions are at issue. *See, e.g.*, *Xodus v. The Wackenhut Corp.*, 626 F. Supp. 2d 861, 865 (N.D. Ill. 2009). Davis cannot satisfy the requirement to produce competent causation evidence by simply producing medical records, *see Smothers*, 2014 WL 3051210, at *5, particularly when those records report Davis's own conclusions, not those of her treatment providers. Thus, Davis's mental health records provide no basis to reject or modify the Magistrate Judge's Recommendation.

  3. <u>*De Minimis* Injuries</u>

A plaintiff bringing a Fourth Amendment excessive force claim must establish an injury that is not *de minimis*. *Aldaba v. Pickens*, 777 F.3d 1148, 1161 n.3 (10th Cir. 2015)*; Segura v. Jones*, 259 F. App'x 95, 102–03 (10th Cir. 2007). The Magistrate Judge found "no evidence" that Davis's claimed injuries from having her hair pulled or being placed on glass debris "were anything other than de minimis." (ECF No. 109 at

18 & n.12.) Davis's Objection does not challenge this finding and does not list any of these injuries as injuries from which she continues to suffer. (*See* ECF No. 110 ¶ 50.) Accordingly, this Court adopts the Magistrate Judge's finding with respect to these injuries.

### 4. Summary

Concerning the injuries that allegedly resulted from the February 25, 2012 incident, the Court adopts the Magistrate Judge's finding that the facts in the light most favorable to Davis show only a scratch to her left eye and a labral tear in her right shoulder.

### III. ANALYSIS

### A. Claims Against the Individual Police Officers

#### 1. Qualified Immunity and Excessive Force Standards

The Magistrate Judge recommended granting all individual Defendants qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks omitted).

In this context, the constitutional right at issue is an individual's Fourth Amendment right to be free from excessive force when being arrested by a police officer. The force used by a police officer is excessive if it is not objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 399 (1989).

### 2. Wagner and Current

The Magistrate Judge noted that "[t]he evidence against Defendants Wagner and Current is sparse." (ECF No. 109 at 26.) They were not involved in shattering Davis's window, pulling her from her car, or forcing her to the ground. After those events, however, one of them pinned Davis's legs to the ground as Clifford and Fahlsing struggled to handcuff Davis. This appears to be the only physical force that either Wagner or Current applied to Davis.

Given the minimal nature of the force and the reasonableness of its use in the situation (*i.e.*, against a writhing arrestee), the Magistrate Judge concluded that Davis had failed to raise even a colorable claim of excessive force against Wagner or Current, and they were thus entitled to qualified immunity because Davis could not establish the first prong of the qualified immunity test (violation of a constitutional right). (*Id.* at 26–27.) Davis has not challenged this conclusion and there is no clear error on the face of it. Accordingly, the Court adopts the Magistrate Judge's recommendation and holds that Wagner and Current are entitled to qualified immunity.

### 3. Clifford and Fahlsing

The Magistrate Judge understood that the case was more difficult for Clifford and Fahlsing because their actions (shattering Davis's window, pulling her out of the car through that window, and forcing her to the ground on top of glass shards) are less obviously reasonable. Indeed, the Magistrate Judge concluded that a jury could find for Davis on the first prong of the qualified immunity test (violation of a constitutional right) because the evidence "seen in a light most favorable to [Davis] indicates that this justified traffic stop escalated quickly to the point where Defendants Clifford and

Fahlsing may have prematurely used force against [Davis]." (ECF No. 109 at 30.) Clifford and Fahlsing have not objected to this conclusion and the Court sees no error on the face of it. The Court therefore adopts the Magistrate Judge's conclusion that a jury could find for Davis on the question of whether Clifford's and Fahlsing's actions were reasonable under the circumstances.

However, on the second prong of the qualified immunity test (clearly established law), the Magistrate Judge found for Clifford and Fahlsing. The Magistrate Judge carefully compared and contrasted Clifford's and Fahlsing's actions to those described in previous Tenth Circuit decisions involving appropriate force when faced with an individual resisting arrest. (*Id.* at 30–35.) The Magistrate Judge concluded that the applicable case law, as it stood at the time of the February 25, 2012 incident, suggested that Clifford's and Fahlsing's actions, "while unfortunate, [were] not excessive to the point of violating [Davis's] clearly established right or rights." (*Id.* at 34 (internal quotation marks omitted).)

Davis counters with three decisions, one from the First Circuit, one from the Seventh Circuit, and one from the District of Delaware. A plaintiff seeking to demonstrate clearly established law in the Tenth Circuit normally must "identify[] an on-point Supreme Court or published Tenth Circuit decision." *Quinn v. Young*, 780 F.3d 998, 1005 (10th Cir. 2015). "Alternatively," however, the plaintiff may assert "the clearly established weight of authority from other courts [that] have found the law to be as the plaintiff maintains." *Id.* (internal quotation marks omitted). The Court will therefore examine Davis's three cited decisions.

Davis's First Circuit decision is *Hunt v. Massi*, 773 F.3d 361 (1st Cir. 2014). *Hunt* involved an arrestee who requested to be handcuffed with his hands in front of him because of a recent stomach surgery that supposedly prevented being handcuffed from behind. *Id.* at 364. The arrestee allegedly showed his stomach scar to the officers, but they were not persuaded that they should deviate from their usual practice of handcuffing from behind. *Id.* The arrestee then began resisting the police officer's attempt to handcuff him in the traditional fashion, requiring the officers to wrestle the arrestee to the floor and strike him a few times to end the struggle and place the handcuffs. *Id.* at 365. The First Circuit granted qualified immunity because there was no clearly established right to be handcuffed as requested and it was not "obvious to a reasonable officer that [the arrestee's] abdominal scar would prevent him from putting his hands behind his back." *Id.* at 368.

*Hunt* is not helpful to Davis. The officers in *Hunt* arguably knew more of the arrestee's condition than Clifford and Fahlsing knew of Davis's condition. Indeed, the most that either Clifford or Fahlsing knew was Clifford's likely knowledge that Davis was in some way disabled given the disability emblem on her license plate, which Clifford probably would have seen when running the plates. (ECF No. 109 at 24.) If the officers in *Hunt* could learn of an actual surgery and see the scar and still be entitled to qualified immunity, *Hunt* suggests that the law applicable to Davis's situation was not clearly established.

Davis's Seventh Circuit case is *Frazell v. Flanigan*, 102 F.3d 877 (7th Cir. 1996), *abrogated on other grounds by McNair v. Coffey*, 279 F.3d 463 (7th Cir. 2002). In

*Frazell*, the plaintiff was ostensibly pulled over for inoperative taillights but the police then began to suspect DUI. *Frazell*, 102 F.3d at 879. After the plaintiff failed sobriety tests, he was handcuffed without resistance and placed in the patrol car. *Id.* He then became dizzy and went into an epileptic seizure. *Id.* at 880. The police either misunderstood or did not care about the plaintiff's condition and began to beat him in an attempt to regain control of the situation. *Id.* At that time, a passenger in the plaintiff's vehicle told the police that the plaintiff sometimes experiences seizures, but the police ignored this warning and continued to strike the plaintiff, causing numerous injuries. *Id.* A jury found that the police officers' conduct was unreasonable under the circumstances.

The police officers in *Frazell* had received specific information about the plaintiff's medical condition and disregarded it. Again, that is not the case with Clifford and Fahlsing. Thus, *Frazell* does not support Davis's position.

Davis's District of Delaware case is *Glover v. City of Wilmington*, 966 F. Supp. 2d 417 (D. Del. 2013), a summary judgment decision. Taking the facts in the light most favorable to the plaintiff there, the plaintiff was a passenger in a vehicle that had been struck by a drunk driver. *Id.* at 422. The plaintiff told the police officer she was having a panic attack but the plaintiff also refused the police officer's offer to summon an ambulance. *Id.* The police officer then arrested the plaintiff "for refusing medical care." *Id.* After the officer handcuffed the plaintiff (apparently without incident), the officer "pushed [the plaintiff] to the ground, which caused her to sustain deep cuts on her knees." *Id.* The District of Delaware denied qualified immunity specifically as to the

officer's decision to arrest. *Id.* at 423–25. The court did not address excessive force under the qualified immunity standard. Rather, the court analyzed the excessive force claim solely to determine whether a trial was necessary to resolve a material factual dispute. *Id.* at 427–28. But the court ultimately did not need to resolve that question because it found that the plaintiff had waived her excessive force claim. *Id.* at 428.

Davis does not explain *Glover*'s relevance, nor does the Court see any obvious connection to the circumstances in which Clifford and Fahlsing found themselves.

Given the inapplicability of *Hunt*, *Frazell*, and *Glover*, Davis has not demonstrated "the clearly established weight of authority from other courts [that] have found the law to be as the plaintiff maintains." *Quinn*, 780 F.3d at 1005 (internal quotation marks omitted). The Court therefore sees no basis to reject the Magistrate Judge's recommendation that Clifford and Fahlsing be granted qualified immunity given the absence of a clearly established right. The recommendation is accordingly adopted.

**B.** ***Monell* Claim Against the City of Lakewood (Failure to Train)**

The Magistrate Judge found that Davis had no support for her *Monell* claim against the City of Lakewood other than conclusory assertions lacking citation to evidence. (ECF No. 109 at 35–36.) Davis has not challenged this finding and there is no clear error on the face of it. Accordingly, the Court adopts the Magistrate Judge's recommendation that the *Monell* claim against the City of Lakewood be dismissed with prejudice.

## IV.  CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Recommendation of the United State Magistrate Judge (ECF No. 109) is ADOPTED in its entirety;

2. Davis's Objection (ECF No. 110) is OVERRULED;

3. The Motion for Summary Judgment of Defendants Clifford, Fahlsing, Wagner, and the City of Lakewood (ECF No. 90) is GRANTED;

4. Defendant Michelle Current's Motion for Summary Judgment (ECF No. 92) is GRANTED;

5. Davis's claims against all Defendants are DISMISSED WITH PREJUDICE;

6. The Clerk shall enter final judgment in accordance with this order and shall terminate this case; and

7. The parties shall bear their own costs.

Dated this 31st day of August, 2015.

BY THE COURT:

William J. Martinez
United States District Judge